No. 15-3679

———————————

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———————————

**EDITH FARINA; EMILIO FARINA,**
**Appellants**

**v.**

**THE BANK OF NEW YORK, as trustee for the CHL Mortgage Pass-Through Trust 2007-8; RESIDENTIAL CREDIT SOLUTIONS, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC; DOES 1-10, inclusive**

———————————

Appeal from the Order of the United States District Court for New Jersey, D.N.J. 3-15-cv-03395, entered October 13, 2015

———————————

**BRIEF FOR AMICUS CURIAE**

———————————

Richard Feder
Richard Feder, J.D.
623 Westview Street
Philadelphia, PA 19119
richiefeder@gmail.com
(215)-844-3491

Amicus Curiae,
By Appointment of the Court

Dated:  September 29, 2020

# Table of Contents

Table of Authorities ........................................................................ ii

I.    Statement of Interest of Amicus Curiae .................................1

II.   Statement of Independence of Amicus ..................................1

III.  Statement of the Issues Presented for Review ......................1

IV.   Summary of Argument ........................................................1

V.    Argument ............................................................................3

    A.    The Cases Appear to Be Parallel. ................................3

    B.    There Probably is No Strong Federal Policy Here Against
        Piecemeal Litigation or in Favor of Abstention........................8

        1.   The Anti-Injunction Act does not provide the
            necessary strong federal policy. ...................................11

        2.   Congressional removal policy probably does not
            provide the necessary strong federal policy. ................14

            a.   Congressional removal policy is too broad and
                malleable. ...........................................................15

            b.   The forum resident rule is not intended to
                provide a substantive protection...........................20

    C.    The Other *Colorado River* Factors Likely Do Not Swing
        the Scales Toward Abstention. ................................................23

    D.    The Courts Have Other Methods at Their Disposal to
        Avoid Inefficiency, Without the Need to Stretch *Colorado
        River* Abstention Beyond its Intended, Exceptionally
        Narrow Borders. ...................................................................25

# Table of Authorities

## Cases

*Allied Mach. Servs. v. Caterpillar, Inc.*,
   841 F. Supp. 406 (S.D. Fla. 1993) ...................................................19

*Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*,
   556 F.3d 459 (6th Cir. 2009) ...............................................................8

*Beepot v. J.P. Morgan Chase Nat'l Corp. Servs.*,
   No. 3:10-cv-423-J-34TEM,
   2011 U.S. Dist. LEXIS 113124 (M.D. Fla. Sep. 30, 2011) ...............11

*BIL Mgmt. Corp. v. N.J. Econ. Dev. Auth.*,
   310 F. App'x 490 (3d Cir. 2008) .......................................................20

*Borkon v. First Union Nat'l Bank*, Civ. Act. No. 00-2850,
   2001 U.S. Dist. LEXIS 13937 (E.D. Pa. Sep. 7, 2001),
   *aff'd*, 47 F. App'x 177 (3d Cir. 2002)...................................................13

*Bradeen v. Bank of N.Y. Mellon Tr. Co.*, Civ. Act. No. 18-cv-11753,
   2018 U.S. Dist. LEXIS 188586 (D. Mass. Nov. 2, 2018) ...................9

*Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942).............................25

*Brumfiel v. U.S. Bank, N.A.*, Civ. Act. No. 14-cv-2453- WJM,
   2014 U.S. Dist. LEXIS 171471 (D. Colo. Dec. 11, 2014).................10

*Chambers v. Wells Fargo Bank, N.A.*, Civ. Act. No. 15-6976 (JBS/JS),
   2016 U.S. Dist. LEXIS 83580 (D.N.J. June 28, 2016),
   *aff'd*, 726 F. App'x 886 (3d Cir. 2018).............................................7, 9

*Colorado River Water Conservation District v. United States*,
   424 U.S. 800 (1976)   ........................................................... *passim*

*Day v. Union Mines, Inc.*, 862 F.2d 652 (7th Cir. 1988) .................15, 16, 19

*Delacruz v. Alfieri*, 145 A.3d 695 (N.J. Super. 2015) ...................................7

*Dowell v. Bayview Loan Servs., LLC*, No. 1:16-CV-02026,
   2017 U.S. Dist. LEXIS 69149 (M.D. Pa. May 4, 2017) ....................10

*Fidelity Federal Bank v. Larken Motel Co.*,
    764 F. Supp. 1014 (E.D. Pa. 1991) ....................................19

*Forehand v. First Ala. Bank*, 727 F.2d 1033 (11th Cir. 1984)........................8

*Freed v. Friedman*, 215 F. Supp. 3d 642 (N.D. Ill. 2016) ......................14, 15

*Hendricks v. Mortg. Elec. Registration Sys.*,
    No. 8:12-CV-2801-T-30TGW,
    2013 U.S. Dist. LEXIS 44620 (M.D. Fla. Mar. 28, 2013).................10

*Hernandez v. Fannie Mae*, No. 2:14-7950 (WJM),
    2015 U.S. Dist. LEXIS 67476 (D.N.J. May 26, 2015) ......................13

*Ingersoll-Rand Fin. Corp. v. Callison*, 844 F.2d 133 (3d Cir. 1988)............20

*J.I.K. Realty Co. v. Steward*, No. 87 C 2839,
    1989 U.S. Dist. LEXIS 15647 (N.D. Ill. Dec. 28, 1989) ...................10

*Jimenez v. Rodriguez-Pagan*, 597 F.3d 18 (1st Cir. 2010) ...........................8

*Johnson Controls, Inc. v. Am. Motorists Ins. Co.*,
    719 F. Supp. 1459 (E.D. Wis. 1989) ........................................... 16-19

*Kane v. Bank of Am., Nat'l Ass'n*, No. 13 C 8053,
    2017 U.S. Dist. LEXIS 77726 (N.D. Ill. May 23, 2017) ..................10

*Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274 (3d Cir. 2017)........3, 4, 25

*Knight v. DJK Real Estate Grp., Inc.*, No. 15 C 5960,
    2015 U.S. Dist. LEXIS 172029 (N.D. Ill. Dec. 28, 2015) .................15

*La Duke v. Burlington N. R. Co.*, 879 F.2d 1556 (7th Cir. 1989) ................20

*Land Holdings (st. Thomas) v. Mega Holdings*,
    283 F.3d 616 (3d Cir. 2002)......................................................9

*Lech v. Third Fed. Sav. & Loan Ass'n of Cleveland*, No. 2:13-cv-518,
    2013 U.S. Dist. LEXIS 180626 (S.D. Ohio Dec. 27, 2013) ..............11

*MacIntyre v. JP Morgan Chase Bank*,
  Civ. Act. No. 12-cv-2586-WJM-MEH,
  2015 U.S. Dist. LEXIS 34220 (D. Colo. Mar. 19, 2015),
  *aff'd*, 644 F. App'x 806 (10th Cir. 2016) ............................................10

*Microsoftware Comput. Sys., Inc. v. Ontel Corp.*,
  686 F.2d 531 (7th Cir. 1982)................................................................15

*National City Mortg. Co. v. Stephen*, 647 F.3d 78 (3d Cir. 2011) ...........9, 23

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*,
  571 F.3d 299 (3d Cir. 2009) ................................................................23

*Patel v. PNC Bank*, Civil Action No. 2:15-3432 (CCC),
  2016 U.S. Dist. LEXIS 10526 (D.N.J. Jan. 28, 2016) .......................12

*Pillitteri v. First Horizon Home Loans*, No. 14-03076 (FLW),
  2015 U.S. Dist. LEXIS 22296 (D.N.J. Feb. 24, 2015) ........................7

*Rambaran v. Park Square Enters.*, No. 6:08-cv-247-Orl-19GJK,
  2008 U.S. Dist. LEXIS 71538 (M.D. Fla. Sep. 22, 2008) .................20

*Rodriguez v. Anselmo, Lindberg & Assocs., LLC*, No. 19 C 271,
  2019 U.S. Dist. LEXIS 150646 (N.D. Ill. Sep. 4, 2019)...............14, 15

*Ruffolo v. HSBC Bank USA, N.A.*, Civ. Act. No. 14-638 (MAS) (DEA),
  2014 U.S. Dist. LEXIS 141514 (D.N.J. Oct. 3, 2014)........................10

*Ryan v. Johnson*, 115 F.3d 193 (3d Cir. 1997) ............... 1, 2, 8, 10, 18, 22-24

*St. Clair v. Wertzberger*, 637 F. Supp. 2d 251 (D.N.J. 2009) .......................12

*Sheldrick v. Wells Fargo Bank, N.A.*, No. 15-5332,
  2015 U.S. Dist. LEXIS 115064 (D.N.J. Aug. 31, 2015) ......................9

*State Auto Ins. Cos. v. Summy*, 234 F.3d 131 (3d Cir. 2000) .......................25

*Tom v. GMAC Mortg., LLC*, No. 10-00653 SOM/BMK,
  2011 U.S. Dist. LEXIS 56825 (D. Haw. May 25, 2011),
  *aff'd*, 588 F. App'x 671 (9th Cir. 2014) .............................................25

*United States v. Morros*, 268 F.3d 695 (9th Cir. 2001) ..................................8

*United States Steel Corp. Plan for Emp. Ins. Ben. v. Musisko*,
    885 F.2d 1170 (3d Cir. 1989)..............................................................12

*Wilson v. Bank of America, N.A.*, 684 Fed. App'x 897 (11th Cir. 2017)......11

## Statutes

Anti-Injunction Act, 28 U.S.C. § 2283 ......................................... 2, 11-13, 21

Federal Employers' Liability Act, 45 U.S.C. §§ 51 to 60...........................20

Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701-20 ...............20

Securities Act of 1933, 15 U.S.C. § 77v(a) ...........................................20, 21

Truth in Lending Act, 15 U.S.C. § 1640(e)..................................................11

28 U.S.C. § 1332(a)            ....................................................................14

28 U.S.C. § 1441(b)(2)          ...................................................3, 14, 21, 22

## Law Reviews

Note, *Federal Court Stays and Dismissals in Deference to Parallel
    State Court Proceedings: The Impact of Colorado River*,
    44 U. Chi. L. Rev. 641, 668 (1977) ....................................................17

## I.    Statement of Interest of Amicus Curiae

Amicus presents this brief by appointment of the Court.  Order of July 6, 2020.

## II.    Statement of Independence of Amicus

No one other than Amicus authored the brief in whole or in part; or contributed money intended to fund preparation or submission of the brief.

## III.    Statement of the Issues Presented for Review

By Order of the Court, Amicus will address the following questions:

1. Whether the District Court erred in applying *Colorado River* abstention; *see Ryan v. Johnson*, 115 F.3d 193, 19[8] (3d Cir. 1997) ("there must be a strongly articulated congressional policy against piecemeal litigation in the specific context of the case under review").

Suggested Answer:  Yes.

2.  Whether there is a congressional policy against piecemeal litigation in foreclosure actions.

Suggested Answer:  No.

## IV.    Summary of Argument

Abstention is only appropriate under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), if the federal and State actions are parallel.  Here, the two cases appear to be parallel, as all of the issues raised by

Plaintiffs appear to have been raised in the State court foreclosure proceeding, *viz.*, the validity of the mortgage assignment, and fraud in the assignment and in the making of the loan. Whether the foreclosure court properly *addressed* those issues is beside the point; that is a matter that can be resolved, if necessary, by the New Jersey courts, on appeal.

If the actions are parallel, this Court then applies a multi-factor test to determine whether to abstain. The paramount factor -- and very likely the dispositive factor in most cases -- is whether there is a "strongly articulated *congressional policy* against piecemeal litigation in the specific context of the case under review." *Ryan*, 115 F.3d at 198 (emphasis in original).

Amicus has identified no federal policy that would counsel against piecemeal litigation in foreclosure actions, *per se*. Two federal policies, however, are worth examining, as they have been relied upon by several district courts and are not without some appeal. In the final analysis, however, Amicus submits that neither of these policies provides a strong justification for abstention.

The Anti-Injunction Act is implicated here, because a declaratory judgment in favor of Plaintiffs could effectively operate as an injunction directing the New Jersey courts not to proceed with the foreclosure. The Act, however, either applies on its face to preclude judgment (a question not presently before the Court), or it does not. And, if it does not, it would grossly overstate Congressional policy to read into an Act that does *not* preclude adjudication a policy that precludes adjudication.

Federal removal policies also potentially present the necessary strong federal policy to call for abstention.  Plaintiffs here are defendants in the State court foreclosure case, and they are precluded by 28 U.S.C. § 1441(b)(2), as home State defendants, from removing that case to federal court.  Arguably, that bar to removal reflects a Congressional policy that defenses in State court actions, when raised by home State defendants, must be heard in State court and cannot be raised in federal court, either directly, via removal, or indirectly (as was done here), by bringing a parallel federal action.  Amicus submits, however, that the argument "proves too much," because the removal statutes can too easily be manipulated to find a policy against hearing a parallel case in federal court, both in instances where removal is barred and in instances where removal is allowed but was not exercised.  A policy that is so malleable and so broad that it can be found in the removal statutes regardless whether the removal statutes prohibit or permit removal cannot constitute the narrow and exceptional policy that can justify a refusal to exercise Congressionally-mandated jurisdiction.

The other *Colorado River* factors are not sufficiently significant here to change the outcome.  The "strong federal policy" question should be dispositive.

## V.    Argument

### A.    The Cases Appear to Be Parallel.

The threshold question that must be resolved before undertaking a *Colorado River* analysis is whether the two actions are "parallel."  "[C]ases are parallel when they involve the same parties and claims." *Kelly v. Maxum Specialty Ins. Grp.,*

868 F.3d 274, 285 (3d Cir. 2017) (quote marks and citations omitted). The cases
must be "truly duplicative, that is, . . . the parties and the claims [must be]
identical, or at least effectively the same." *Id.* (quote marks and citations omitted).
Put differently, proceedings are parallel when they raise "substantially identical
claims and nearly identical allegations and issues." *Id.* (brackets, quote marks and
citations omitted).

The Court in *Kelly* cautioned, however, that "[c]ases are not parallel under
*Colorado River* abstention where the federal court case involves claims that are
distinct from those at issue in a state court case, like where parties in the two cases
employ[] substantially different approaches [which] might achieve potentially
different results. * * * [A]bstention is inappropriate where there is a lack of
identity of all issues between lawsuits and no theoretical obstacle to both actions
proceeding independently." *Id.* (quote marks and internal citations omitted).

Applying these principles to the instant case is not a simple task, as the
nature of the Farinas' claims are not entirely clear; nor does the record here include
the complete State court record. Nonetheless, from the information available to us,
it appears very likely that the two cases at issue here are parallel.

In their Appellants' Brief, the Farinas explain that this case arises out of the
foreclosure action pending in New Jersey Superior Court and that the Farinas
challenge the standing of the bank in that action to foreclose. *See, e.g.*, Plaintiffs'-
Appellants' Opening Brief at 10 (a homeowner may "preemptively challenge a
bank or lender's standing to bring a foreclosure action, as in the Instant case").
More particularly, the Farinas appear to challenge the validity of the assignments

that led to the Bank of New York's claim of standing in the foreclosure action. *See id.* (noting "the importance of ensuring that all appropriate assignments and documents evidencing a proper chain of title are promptly recorded, an issue which would have been raised in both courts had the Farina's [*sic*] had an opportunity to be heard").

The Farinas further acknowledge that the purpose of the instant suit is to save their home from the foreclosure that is pending in State court. *See id.* at 12-13 (foreclosure should be stayed to prevent loss of home). Indeed, they effectively concede that they are seeking to challenge the State court's decision to allow the Bank to foreclose. *See id.* at 13 (State court loser who complains of fraud should be allowed to have his claim heard in federal court).

At oral argument below, the Farinas' counsel was more specific, making clear that fraud at various stages forms the basis for their contention that the Bank lacks standing to foreclose: "fraud in the inducement; there's some undue influence, that lead into some predatory practices; you've got fraud in the servicing, there's some questions with what [R]esidential has done; there's the questions of who the proper parties are. That issue has never been adjudicated. The fraud permeates this whole thing." Appellees' Joint Appendix, A56 (Tr. at 11); *see also id.*, A57 (Tr. at 12) (describing the fraud); *id.*, A65 (Tr. at 20) (the fraud could lead to a rescission of the loan).

All of these arguments raised in the instant case were previously raised by the Farinas in the foreclosure proceedings. This is clear from the selected State

court pleadings in the record here.[1] *See, e.g.*, Answer to Complaint at 6, Second Defense, Doc. 7-3 at 39, Page ID 95 (lack of standing; not authorized to enforce the Mortgage); *id.* at 7, Seventh Defense, Doc. 7-3 at 40, Page ID 96 (fraudulent inducement); *id.* at 8, Tenth Defense, Doc. 7-3 at 41, Page ID 97 (fraud); Defendants' Brief in Opp. to Summ. Judg. (counseled, in N.J. Superior Ct.), Doc. 7-3 at 164, Page ID 220 (challenging transfer of mortgage to Bank of New York as invalid); Motion to Vacate Default Judgment (N.J. Superior Ct.), Doc. 14 at 17-18, Page ID 390-91 (alleging improper or incomplete assignment; and fraud).

Even if the Court chooses not to take notice of these documents, the Farinas' counsel below acknowledged that fraud was part of the Farinas' defense in the foreclosure proceeding, *see* A54 (Tr. at 9); as was the Farinas' challenge to the validity of the assignment, *see* A64 (Tr. at 19) (New Jersey court looked to whether the assignment of the mortgage to the bank was valid).

It may well be, as the Farinas contend, that the foreclosure court did not give these defenses the attention to which they were due, *see, e.g.*, A55-A56 (Tr. at 10-11) ("[i]n the state court proceeding, he was denied an opportunity to submit an expert's report"); Plaintiffs'-Appellants' Opening Br. at 4 (denied discovery; no adjudication on the merits), but that is of no moment. So long as the defenses were

---

[1] Defendants submitted some of the State court pleadings as Exhibits to the Parlapiano Certification. *See* Dist. Ct. Docket, Document 7-2 (Certification); Dist. Ct. Docket, Document 7-3 (Exhibits). The Farinas submitted a copy of their State court Motion to Vacate Default Judgment, as an Exhibit to their Response to Motion to Dismiss. *See* Dist. Ct. Docket, Document 14 (Response to Motion to Dismiss); *id.* at 10, Page ID 383 (State court Motion to Vacate).

presented to the foreclosure court, they were well within the scope of the foreclosure case, regardless whether the trial judge handled them appropriately. *See, e.g.*, *Delacruz v. Alfieri*, 145 A.3d 695, 698, 707 (N.J. Super. 2015) (claims of fraud in the making of the loan are cognizable in a foreclosure case).[2]

In their federal action, Plaintiffs here appear to be asking the district court to do what they unsuccessfully asked the New Jersey foreclosure court to do -- find that the bank is not authorized to proceed with the foreclosure.  Whether the reason is denominated fraud, ineffective assignment of the mortgage, or lack of standing, these issues all were raised to the State court, and Plaintiffs wish to relitigate them here.  This is the essence of parallel litigation.  *See generally Chambers v. Wells Fargo Bank, N.A.*, Civ. Act. No. 15-6976 (JBS/JS), 2016 U.S. Dist. LEXIS 83580, at *11 (D.N.J. June 28, 2016) ("Plaintiff's claims against Wells Fargo are nearly identical to those raised as counterclaims and affirmative defenses to the state foreclosure action."), *aff'd*, 726 F. App'x 886, 888 (3d Cir. 2018) (non-precedential) (holding same).

---

[2] To the extent the Farinas contend they were denied an opportunity in the foreclosure action to present certain challenges because the State court held they lacked standing to challenge the assignment of the mortgage, that lack of standing likely was not unique to their status as *defendants* in the foreclosure action; it appears they likely would lack standing as plaintiffs in district court, too. *See, e.g.*, *Pillitteri v. First Horizon Home Loans*, No. 14-03076 (FLW), 2015 U.S. Dist. LEXIS 22296, at *13 (D.N.J. Feb. 24, 2015) (cited by Bank of New York); *but see id.* at *13-*14 (citing contrary cases).  Thorough research of this question, however, including the many unpublished New Jersey State court decisions addressing the issue, is beyond the scope of Amicus's appointment.

**B.    There Probably is No Strong Federal Policy Here Against Piecemeal Litigation or in Favor of Abstention.**

Assuming the two cases are parallel, the Court must weigh the *Colorado River* factors to determine whether the district court was correct in taking the extraordinary step of abstaining and, thereby, failing to exercise the diversity jurisdiction that Congress has vested in it.  This Court has made clear that "the most important factor" -- the "paramount factor" -- in determining whether to abstain under *Colorado River* is the avoidance of piecemeal litigation.  *Ryan*, 115 F.3d at 196-97 (quote marks omitted).  Recognizing, however, that piecemeal litigation is almost inevitable whenever a district court declines to abstain in the face of parallel litigation, the Court has given more bite to this factor by insisting that this factor weighs in favor of abstention "only when there is evidence of a strong federal policy that all claims should be tried in the state courts."  *Ryan*, 115 F.3d at 198; *see also id.* ("there must be a strongly articulated congressional policy against piecemeal litigation in the specific context of the case under review").[3]

---

[3] The consequence of this requirement of a strong federal policy is that duplication and inefficiency are never enough to justify abstention.  *Cf.* Oral Opinion Below, Dist. Ct. Dock., Doc. 25 at 27-30, Page ID 525-28 (State court already has addressed these issues).  This Circuit is not the only Circuit to insist on the need for a strong federal policy in order to overcome a federal court's unfailing obligation to exercise its jurisdiction.  *See, e.g.*, *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 467 (6th Cir. 2009) (need strong federal policy); *United States v. Morros*, 268 F.3d 695, 707 (9th Cir. 2001) (same); *Forehand v. First Ala. Bank*, 727 F.2d 1033, 1035 (11th Cir. 1984) (same); *but see Jimenez v. Rodriguez-Pagan*, 597 F.3d 18, 29 (1st Cir. 2010) ("On multiple occasions, we have found an exceptional basis that counsels in favor of abstention, even though no particular federal policy was in play.") (citing cases).

There certainly is no "strong federal policy" against the determination of foreclosure cases in federal court. Indeed, this Court has expressly approved of the use of diversity jurisdiction by lenders when they move in federal court to foreclose on defaulted loans. *See, e.g.*, *Nat'l City Mortg. Co. v. Stephen*, 647 F.3d 78, 82 (3d Cir. 2011) ("Although foreclosure actions are more common in state court, the District Court had diversity jurisdiction [over foreclosure action]"); *Land Holdings (st. Thomas) v. Mega Holdings*, 283 F.3d 616, 619 (3d Cir. 2002) (affirming diversity jurisdiction over foreclosure action).

Nor has Amicus been able to locate or identify any federal policy against maintenance of such suits in federal court when the plaintiff and defendant are reversed, as they are here, *i.e.*, when the borrower sues the lender, challenging the lender's *right* to foreclose. But is there a federal policy against assertion of federal jurisdiction in such cases, *when there is a parallel case proceeding in State court*?

Although district courts within and without this Circuit often abstain when faced with such seemingly duplicative litigation, the majority of these courts have failed to identify a relevant federal policy (other than a general distaste for duplicative litigation). Most don't even try. *See, e.g.*, *Chambers v. Wells Fargo Bank, N.A.*, *supra*, 2016 U.S. Dist. LEXIS 83580, at *14 (risk of "inconsistent results"), *aff'd*, 726 F. App'x 886 (3d Cir. 2018) (non-precedential); *Sheldrick v. Wells Fargo Bank, N.A.*, No. 15-5332, 2015 U.S. Dist. LEXIS 115064, at *10 (D.N.J. Aug. 31, 2015) (will "cause havoc with the rulings of the state court"); *see also Bradeen v. Bank of N.Y. Mellon Tr. Co.*, Civ. Act. No. 18-cv-11753, 2018 U.S. Dist. LEXIS 188586, at *13 (D. Mass. Nov. 2, 2018) ("no federal policy,

[but] clear risk of inconsistent dispositions"); *Kane v. Bank of Am., Nat'l Ass'n*, No. 13 C 8053, 2017 U.S. Dist. LEXIS 77726, at *3 (N.D. Ill. May 23, 2017) (danger of inconsistent judgments); *Brumfiel v. U.S. Bank, N.A.*, Civ. Act. No. 14-cv-2453-WJM, 2014 U.S. Dist. LEXIS 171471, at *1 (D. Colo. Dec. 11, 2014) (duplicative litigation); *Ruffolo v. HSBC Bank USA, N.A.*, Civ. Act. No. 14-638 (MAS) (DEA), 2014 U.S. Dist. LEXIS 141514, at *11-12 (D.N.J. Oct. 3, 2014); *Hendricks v. Mortg. Elec. Registration Sys.*, No. 8:12-CV-2801-T-30TGW, 2013 U.S. Dist. LEXIS 44620, at *8 (M.D. Fla. Mar. 28, 2013) (abstaining because two parallel cases would risk throwing ownership of property into confusion and disarray); *J.I.K. Realty Co. v. Steward*, No. 87 C 2839, 1989 U.S. Dist. LEXIS 15647, at *16 (N.D. Ill. Dec. 28, 1989) (reverse situation - borrower challenges in State court right of bank to foreclose, bank attempts to foreclose in federal court; federal court abstains because proceeding in both forums "would truly be wasteful"); *cf. MacIntyre v. JP Morgan Chase Bank*, Civ. Act. No. 12-cv-2586-WJM-MEH, 2015 U.S. Dist. LEXIS 34220, at *10-*11 (D. Colo. Mar. 19, 2015) (expressly rejecting *Ryan* and the need for a strong federal policy), *aff'd without discussion*, 644 F. App'x 806, 808 (10th Cir. 2016) (non-precedential).

In contrast, a very few district courts have searched for a relevant federal policy and, failing to find one, have declined to abstain. *See, e.g.*, *Dowell v. Bayview Loan Servs., LLC*, No. 1:16-CV-02026, 2017 U.S. Dist. LEXIS 69149, at *43 (M.D. Pa. May 4, 2017) ("[A]lthough abstention may result in judicial efficiency, Wells Fargo and Bayview have not pointed to any congressional policy against piecemeal litigation in the specific context of this case. Accordingly, the

avoidance of piecemeal litigation does not support abstention."); *Lech v. Third Fed. Sav. & Loan Ass'n of Cleveland*, No. 2:13-cv-518, 2013 U.S. Dist. LEXIS 180626, at *13 (S.D. Ohio Dec. 27, 2013) ("no 'clear federal policy' against piecemeal litigation"; court declines to abstain) (citation omitted).

Nonetheless, Amicus submits that there are two potential federal policies that are implicated by maintenance in federal court of a lawsuit that effectively challenges the right of a bank to foreclose, when there is a parallel foreclosure case proceeding in state court.[4]

### 1.    The Anti-Injunction Act does not provide the necessary strong federal policy.

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.  Although the instant case is a declaratory judgment action, with no express request for injunctive relief, the Anti-Injunction Act is nonetheless

---

[4] In *Beepot v. J.P. Morgan Chase Nat'l Corp. Servs.*, No. 3:10-cv-423-J-34TEM, 2011 U.S. Dist. LEXIS 113124, at *33 (M.D. Fla. Sep. 30, 2011), the court found a federal policy in the fact that Congress allowed for concurrent jurisdiction over plaintiff's claims under the Truth in Lending Act, 15 U.S.C. § 1640(e).  It is unclear to Amicus what makes this alleged policy unique to claims under the TILA, as opposed to virtually all litigation in the American system, so we offer no further discussion of it.  *Cf. Wilson v. Bank of America, N.A.*, 684 Fed. App'x 897, 901 (11th Cir. 2017) (non-precedential) (rejecting concurrent jurisdiction as a federal policy that favors abstention, though nonetheless affirming abstention because State foreclosure proceedings were substantially more advanced than the federal challenge to foreclosure).

potentially relevant because, "[w]here . . .declaratory relief would produce the same effect as an injunction, a declaratory judgment is barred if section 2283 would have prohibited an injunction." *United States Steel Corp. Plan for Emp. Ins. Ben. v. Musisko*, 885 F.2d 1170, 1175 (3d Cir. 1989). Arguably, declaratory relief in favor of Plaintiffs here would "produce the same effect as an injunction" against foreclosure in State court; thus, the Anti-Injunction Act is potentially implicated.

We have located two district court decisions that find, in the Anti-Injunction Act, the necessary strong federal policy against piecemeal litigation to justify abstention. We submit these decisions are mistaken, but we call them to the Court's attention for its consideration.

In *St. Clair v. Wertzberger*, 637 F. Supp. 2d 251 (D.N.J. 2009), plaintiff, in federal court, sued the lawyers for the bank that had moved in State court to foreclose on plaintiff's home, claiming that the lawyers' foreclosure tactics violated the Fair Debt Collection Practices Act. The district court, *sua sponte*, abstained under *Colorado River*, finding, *inter alia*, that exercise of federal jurisdiction would contravene federal policy set forth in the Anti-Injunction Act. A ruling in plaintiff's favor, according to the Court, "would . . . effectively constitute an injunction enjoining the state court from ordering a foreclosure sale, which is prohibited by the Anti-Injunction Act." *Id.* at 255; *accord Patel v. PNC Bank*, Civil Action No. 2:15-3432 (CCC), 2016 U.S. Dist. LEXIS 10526, at *10-*12 (D.N.J. Jan. 28, 2016) (citing *St. Clair*).

The problem with this reasoning is that it substantially overstates Congressional policy.

If, indeed, the declaratory judgment would effectively operate as an injunction against state foreclosure proceedings, then proceeding with the federal case might well be barred *directly* by the Anti-Injunction Act, and there would be no need to consider abstention.  (The question whether the Act directly bars the instant case is beyond the scope of this appeal and of Amicus's appointment.[5])  If, however, the Act would not strictly bar the declaratory judgment, *i.e.*, if the intent of Congress was *not* to include actions like the instant one within the scope of the Act, then it would go beyond the intent of Congress to say that, even though Congress chose not to include this particular case within the scope of the Act, we nonetheless conclude that Congressional policy strongly disfavors such cases. Rather than *applying* a strong Congressional policy, it would show great *disrespect* to Congressional intent to construe that intent to extend to areas to which Congress chose not to venture in the statute itself.

Amicus submits that the Anti-Injunction Act does, indeed, express a Congressional policy, but the scope of that policy is set forth in the Act itself. Either Congress chose to bar this action (a question that is not presented by this appeal), or Congress chose not to bar this action.  If the latter, it makes no sense to nonetheless find in the Act a Congressional policy that effectively bars the action.

---

[5] For a discussion of the direct applicability of the Anti-Injunction Act in cases similar to the instant case, *see Hernandez v. Fannie Mae*, No. 2:14-7950 (WJM), 2015 U.S. Dist. LEXIS 67476, at *8 (D.N.J. May 26, 2015); *Borkon v. First Union Nat'l Bank*, Civ. Act. No. 00-2850, 2001 U.S. Dist. LEXIS 13937, at *11-*12 (E.D. Pa. Sep. 7, 2001), *aff'd*, 47 F. App'x 177 (3d Cir. 2002) (non-precedential).

### 2. Congressional removal policy probably does not provide the necessary strong federal policy.

Plaintiffs are residents of New Jersey.  A11, Complaint ¶ 1.  Therefore, as residents of the forum State, Plaintiffs would be precluded from removing the Bank of New York's foreclosure action filed in New Jersey Superior Court.  *See* 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title [(diversity)] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.").  Assuming the claims raised in the instant case were or could have been raised as defenses to the State foreclosure action, Plaintiffs arguably have evaded the intent of the removal bar by bringing those State court defenses as *plaintiffs* in this direct, federal action.

It reasonably could be argued that Congress intended that defenses available to State court defendants must be litigated in State court when those defendants are residents of the forum State; and, thus, to allow those defendants to make an end-run around the removal bar by bringing a separate federal action contravenes Congressional intent.  Amicus submits that this argument "proves too much" and should be rejected, but there is no doubt that several district court decisions have adopted this reasoning and it cannot be discarded out of hand.

Judge Feinerman of the Northern District of Illinois has applied this reasoning in the foreclosure context on at least three occasions.  *See Rodriguez v. Anselmo, Lindberg & Assocs., LLC*, No. 19 C 271, 2019 U.S. Dist. LEXIS 150646, at *16-17 (N.D. Ill. Sep. 4, 2019); *Freed v. Friedman*, 215 F. Supp. 3d 642, 657

(N.D. Ill. 2016); *Knight v. DJK Real Estate Grp., Inc.*, No. 15 C 5960, 2015 U.S. Dist. LEXIS 172029, at \*23-24 (N.D. Ill. Dec. 28, 2015).

Relying on *Day v. Union Mines, Inc.*, 862 F.2d 652 (7th Cir. 1988), which provides that, in the Seventh Circuit, the availability of removal is one factor to be considered in a *Colorado River* analysis, Judge Feinerman holds that "[t]his factor recognizes a policy against a federal court's hearing claims that are closely related to non-removable state proceedings." *Freed*, 215 F. Supp.3d at 657. Because the federal plaintiff in each of these cases was a resident of the State in which the foreclosure proceedings were being litigated, those foreclosure proceedings were not removable by the federal plaintiff (defendant in the foreclosure proceedings) and, therefore, to allow the State court defendant to avoid that removal bar by bringing a separate federal action would contravene federal policy, which favors keeping these cases in State court. *See, e.g.*, *Rodriguez*, *supra*, at \*16-\*17.

### a. Congressional removal policy is too broad and malleable.

The problem with this reasoning, we submit, is evidenced by the Seventh Circuit's decision in *Day*, which actually set forth two *separate* rules arising out of federal removal policy.

On the one hand, the Court there held that a party who had the opportunity to remove a case to federal court, but chose to forego that opportunity, could not later bring a separate, parallel, federal action. *Day*, 862 F.2d at 660 (citing *Microsoftware Comput. Sys., Inc. v. Ontel Corp.*, 686 F.2d 531 (7th Cir. 1982)). The Court suggested that, to allow that separate action to proceed would contravene federal policy, which provides a specific means by which that party

could get its claim heard in federal court -- removal.  Allowance of a separate federal claim brought *initially* in federal court would countenance an end-run around the Congressionally-mandated route for getting the case into federal court. *Id.*  Indeed, the court was faced with piecemeal litigation only *because* the foreclosure defendant failed to avail itself of its right to remove the *entire* action.

On the other hand, the Court also held that a party who was *precluded* by federal removal policy from removing a case -- because the parties there lacked complete diversity -- could not make an end run around that removal *bar* by dropping the non-diverse party in a new action brought directly in federal court. *Id.*  In other words, the federal policy *allowing* removal in the first example, and the federal policy *precluding* removal in the second example, each constituted a factor in favor of abstention.

But to find that federal removal rules evince a Congressional policy in favor of abstention in a particular case -- regardless whether those rules *allow* removal under the facts, or *preclude* removal under the facts -- does not constitute a genuine search for the exceptional case or for a unique federal policy; rather, it swallows the rule wholesale, finding a federal policy in favor of abstention almost routinely.

A thoughtful discussion of the issue by Judge Warren, in *Johnson Controls, Inc. v. Am. Motorists Ins. Co.*, 719 F. Supp. 1459 (E.D. Wis. 1989), puts this Catch-22 on full display, although Judge Warren probably does not see it that way.

On the one hand, Judge Warren writes that the *availability* of removal to a State court defendant weighs in favor of abstention when that State court defendant chooses instead to bring a separate federal action based on the same State court

16

controversy; the State court defendant should "use the more efficient and convenient method of removal," rather than manufacturing duplicative litigation. *Id.* at 1467.  On the other hand, Judge Warren writes that the *non-availability* of removal often will *also* weigh in favor of abstention, as "it is not difficult to identify a policy judgment in the restrictions on removal that might counterbalance the obligation to exercise jurisdiction."  *Id.*  For example, Judge Warren explains, if the restriction on removal is based on a Congressional "judgment that the state forum is adequate," then abstention in the federal case would further this Congressional purpose.  *Id.* at 1468.

The law review note upon which Judge Warren relies cites no shortage of examples of when non-removability reflects a Congressional judgment that the state forum is adequate and federal litigation should be stayed.  *See* Note, *Federal Court Stays and Dismissals in Deference to Parallel State Court Proceedings:  The Impact of Colorado River*, 44 U. Chi. L. Rev. 641, 668 (1977) (defendant cannot remove based on a federal *defense*, so shouldn't be allowed to bring a federal action based on that same defense); *id.* (defendant cannot remove in the absence of complete diversity, so shouldn't be allowed to bring a federal action by simply dropping the non-diverse party from the federal suit); *id.* (home state defendant cannot remove, so shouldn't be allowed to bring a federal action based on diversity; Congress has determined that the State forum is fully adequate to protect defendant's rights).  But if the policy against, or in favor of, removal can so easily be construed to reflect a Congressional intent to keep almost any parallel litigation out of federal court, then there is no clear boundary to this alleged policy; and

almost any parallel litigation will provoke an abstention ruling.  But that is contrary to the clear mandate that abstention must be the extraordinary exception, not the rule.

Admittedly, in *Johnson Controls*, Judge Warren found that the *particular* bar to removal in that case -- lack of complete diversity -- did *not* reflect a federal policy that the underlying claims ought to be litigated exclusively in State court. 719 F. Supp. at 1468.  But the fact that there may still be *some* cases in which non-removability does not tilt the balance in favor of abstention does not undercut the central lesson that is presented by this line of cases -- if a rule in favor of removal, and a rule against removal, can each evince a federal policy in favor of abstention, then the search for a policy largely becomes a search for an excuse to abstain; and such an approach cannot be reconciled with *Colorado River* or *Ryan*.

Moreover, the malleability of inferring a federal policy in favor of abstention from the removability, *vel non*, of the underlying State court action is demonstrated by *Johnson Controls* itself.  There, Judge Warren found that the federal plaintiff's evasion of non-removability by dropping the non-diverse party from the federal suit did not contravene an important federal policy in favor of the State forum and, thus, did not tilt the scale in favor of abstention.  719 F. Supp. at 1468.[6]  Yet it appears that in *Day*, upon which Judge Warren heavily relies, the Seventh Circuit

---

[6]     Interestingly, Judge Warren is being exceedingly honest here as to his perspective, and is not placing a thumb on the scale to reach a desired result, as Judge Warren ultimately finds enough other *Colorado River* factors satisfied to hold that abstention *is* nonetheless warranted.  719 F. Supp. at 1469.

found precisely to the contrary, holding that the same policy that precluded the federal plaintiffs from removing the underlying State court action -- lack of complete diversity -- precludes those federal plaintiffs from invoking federal jurisdiction over the same claims by simply dropping the non-diverse party from the case. *See Day*, 862 F.2d at 660; *see also id.* at 655 ("Diversity exists in Indiana only because Bicknell has been dropped as a defendant.").[7] *See also Fid. Fed. Bank v. Larken Motel Co.*, 764 F. Supp. 1014, 1018 (E.D. Pa. 1991) ("This Court will not permit a litigant to circumvent the federal policy which prohibits removal of non-diverse state law cases by dropping the non-diverse party in the federal action, thereby preventing either court from adjudicating all claims between the parties, when the filing of a counterclaim in the state court action would permit the state court to adjudicate all claims between the parties.").

Amicus submits that a federal policy that is sufficiently malleable that it can be found to justify abstention in so many different factual contexts cannot constitute the necessary federal policy to justify the extraordinary remedy of abstention. *Compare Allied Mach. Servs. v. Caterpillar, Inc.*, 841 F. Supp. 406, 408, 410 (S.D. Fla. 1993) (federal policy against removal *by plaintiffs* precludes

---

[7]    Judge Warren appears to have inadvertently mis-quoted *Day* on this point, completely reversing the intent of the *Day* holding. *Compare Day*, 862 F.2d at 660 ("We would be defying the policies behind the requirement of complete diversity and the Section 1441 rule for removal by now granting the Shareholders a right to a federal forum . . . .") (emphasis added), *with Johnson Controls*, 719 F. Supp. at 1467-68 ("it 'would be defying the policies behind the requirement of complete diversity and the Section 1441 rule for removal by not granting the Shareholders a right to a federal forum . . . .'"), *quoting Day*, 862 F2d at 660 (emphasis supplied).

plaintiff from filing duplicative federal action); *with BIL Mgmt. Corp. v. N.J. Econ. Dev. Auth.*, 310 F. App'x 490, 492 n.1 (3d Cir. 2008) (non-precedential) ("section 1441, which prevents a plaintiff from removing an action to federal court, does not prevent refiling of the same or a similar action in federal court").

### b.  The forum resident rule is not intended to provide a substantive protection.

Of course, we do recognize that, *in the appropriate context*, a federal rule of non-removability *can* counsel against maintenance of a federal action filed in contravention of the policy behind the rule.  Thus, in *Ingersoll-Rand Fin. Corp. v. Callison*, 844 F.2d 133, 137 (3d Cir. 1988), this Court held that Congress's express prohibition against removal of claims under the Securities Act of 1933, *see* 15 U.S.C. § 77v(a), weighed heavily against allowing a State court defendant in a Securities Act case to assert in federal court a claim that readily could have been brought as a counterclaim in the State court action.  "The mandate of § 77v cannot be effectuated if the plaintiff in a securities case brought in state court may be thwarted in his choice of forum by being forced to litigate simultaneously his claims as defenses in federal court."  *Ingersoll-Rand*, 844 F.2d at 137.[8]

---

[8] *La Duke v. Burlington N. R. Co.*, 879 F.2d 1556, 1561 (7th Cir. 1989), and *Rambaran v. Park Square Enters.*, No. 6:08-cv-247-Orl-19GJK, 2008 U.S. Dist. LEXIS 71538, at *23-*24 (M.D. Fla. Sep. 22, 2008), similarly rely on a statutory prohibition on removal of particular federal claims, under, respectively, the Federal Employers' Liability Act and the Interstate Land Sales Full Disclosure Act.  These cases are not on point, however, because they involved plaintiffs who brought virtually identical suits in both State and federal court; there was no concern about defendants making an end-run around the bar against removal.

Amicus submits that the existence of a federal rule against removal with respect to a particular, specific, *substantive* class of cases is different in kind, not to mention degree, from the federal rules against removal set forth in Section 1441.

Congress has clearly evinced a preference that plaintiffs' choice of forum in Securities Act cases should prevail, just as Congress evinced a similar preference for State courts with respect to water rights cases, *see Colorado River*.  Allowing a defendant to avoid a plaintiff's choice of a State court forum, by bringing a parallel federal action, does a great disservice to this Congressional preference.  That preference, however, is narrow and focused -- Securities Act cases, water rights cases.  The preference under Section 1441, in contrast, is broad and diffuse (as well as malleable, as discussed, *supra*).  It covers all diversity cases, no matter the substantive issue.  It is based on the procedural posture and venue of a case, not on the substantive matters at issue in the case.

Moreover, the evident purpose of the anti-removal provision of the Securities Act is to protect small investors.  Although Amicus could not locate, after due diligence, any caselaw on the purpose of the rule, it seems likely that Congress did not want to allow large, investor-owned companies to intimidate small investor plaintiffs by haling them into federal court, a forum perceived by many such investors as more complex and more expensive than State court.  Thus the anti-removal provision of the Securities Act provides affirmative protection to a class of plaintiffs deemed in need.

Contrast this with the forum State rule, which recognizes the lack of *need* for removal by State court defendants, who are unlikely to suffer bias in their home-

state court. The rule is not designed to provide anyone with affirmative *protection*; nor is it designed to *prevent* something that Congress saw as *harmful* to a particular class of litigants. Rather, the rule simply reflects Congress's recognition that removal isn't *needed*. Prohibiting removal because it is affirmatively harmful implicates very different concerns than merely prohibiting removal simply because it isn't necessary. An end-run around the former undermines the very scheme of the Securities Act, which is designed to protect small investors. An end-run around the latter does not undermine any overarching scheme; indeed, the diversity statute, as a general matter, *allows* in-State plaintiffs to invoke federal court jurisdiction. Had Congress found this procedural posture to be affirmatively *bad*, it would have prohibited it. Having failed to do so, there is no over-arching Congressional policy that is served by a court-manufactured rule against such a jurisdictional invocation.

To hold that the rule against removal by forum state defendants counsels in favor of abstention whenever a forum State defendant brings a parallel federal action would open the door to an endless parade of malleable inferences to be drawn from the removal statutes, whenever a federal court finds the inefficiency and duplication of parallel litigation overly frustrating. We submit it is difficult to read Section 1441 to evince such a sweeping policy, not to mention that it would contravene the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Ryan*, 115 F.3d at 198 (quoting *Colorado River*).

### C.    The Other *Colorado River* Factors Likely Do Not Swing the Scales Toward Abstention.

This Court's most recent recitation and application of the *Colorado River* factors can be found in *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 308-09 (3d Cir. 2009).  *See also Nat'l City Mortg.*, 647 F.3d at 83-84 (holding no abstention under *Colorado River*).  Not only are these other factors of far less significance than the "federal policy" / piecemeal litigation factor, several matter only if they weigh *against* abstention.  *See, e.g.*, *Nationwide*, 571 F.3d at 308 (state court's ability to protect the parties' interests is only relevant when state court provides *inadequate* protection); *Ryan*, 115 F.3d at 199 (presence of garden variety state or federal issues is only relevant when *federal* issues are present).

Thus, it would appear next to impossible to find abstention appropriate in the *absence* of a strong federal policy against piecemeal litigation; and it likely is the rare case that would find abstention *inappropriate* in the *face* of a strong federal policy against piecemeal litigation.  The presence, *vel non*, of a strong federal policy likely is dispositive in almost every abstention analysis under *Colorado River*.  Amicus, therefore, will address the remaining factors only briefly.  None of them presents anything out of the ordinary in this run-of-the-mill diversity action where there is parallel litigation proceeding in State court.

1.  The New Jersey court was the first court to assume *in rem* jurisdiction over the Farinas' property.  This factor weighs slightly in favor of abstention.

2.  The property and the Farinas themselves are located in Toms River, N.J., approximately 13 minutes from the New Jersey Superior Courthouse in Ocean

County.  The property is approximately one hour from the federal district court in Trenton.  Source:  Google Maps.  This does not appear to be a material difference.[9]

3.  Piecemeal litigation.  Covered, *supra*.

4.  The foreclosure court obtained jurisdiction first.  This factor weighs slightly in favor of abstention.

5.  The matter is based in State law. This factor weighs slightly in favor of State court and, therefore, is neutral.  *See Ryan*, 115 F.3d at 199.  (The Farinas' counsel below suggested that the Farinas are also raising a Truth in Lending Act claim, *see* A54-A60 (Tr. at 9-15), but the claim does not appear in the Complaint, A11, or in a proposed Amended Complaint.  *See* Dist. Ct. Docket, Doc. 19-1 at 3, Page ID 482.)

6.  We know of no reason why the State court, including the State appellate courts, cannot adequately protect the parties' interests.  This factor weighs slightly in favor of State court and, therefore, is neutral.

Summing up, the non-paramount factors tilt ever-so-slightly in favor of abstention.  As noted, though, it is difficult to see how this could outweigh the Court's determination on factor three -- piecemeal litigation -- as informed by the existence, *vel non*, of a strong federal policy.

---

[9] It is not clear to Amicus whether convenience to *defendants* is relevant under this factor. Neither Trenton nor Ocean County would appear to be particularly convenient to Defendants, as Defendants all are residents of States other than New Jersey.  Trenton, though, as a major transportation hub, likely is somewhat more convenient.  This would slightly favor federal court and, therefore, non-abstention.

**D.** **The Courts Have Other Methods at Their Disposal to Avoid Inefficiency, Without the Need to Stretch *Colorado River* Abstention Beyond its Intended, Exceptionally Narrow Borders.**

We do not brief its applicability here, but we note that many of the concerns expressed by both the district court here and by other district courts faced with similar cases might find better outlet in the discretion afforded to district courts under the Declaratory Judgment Act. *See generally Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942); *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 282 (3d Cir. 2017) (applying *Brillhart*); *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 134 (3d Cir. 2000) (*Brillhart* survives *Colorado River*, and continues to give district courts substantial discretion to decline to exercise jurisdiction over duplicative declaratory judgment action in diversity context); *see also Tom v. GMAC Mortg., LLC*, No. 10-00653 SOM/BMK, 2011 U.S. Dist. LEXIS 56825, at *16 (D. Haw. May 25, 2011) ("Whether GMAC Mortgage or Homecoming Financial owns the loan is a matter that should be decided by the state court in the foreclosure proceeding, not via a declaratory judgment claim in this court. *See Brillhart*, 316 U.S. at 495."), *aff'd*, 588 F. App'x 671, 671 (9th Cir. 2014) (non-precedential) (same).


Dated:  September 29, 2020          Respectfully submitted,


                                   _____/s/ Richard Feder_____
                                   Richard Feder
                                   Richard Feder, J.D.
                                   Appointed Amicus

**Combined Certifications**

    1.  I certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

    2.  I certify that the electronically-filed pdf and the paper copy of the brief filed with the Court are identical.

    3.  I certify that the electronic-filed pdf was scanned by Malwarebytes for Mac 4.5.14 and no viruses were detected.

4.  I certify that I caused today to have the foregoing Brief for Amicus Curiae served on all parties, as follows:

On the following, by filing with the Court through the cm/ecf system:

Phoebe N. Coddington, Esq.
Email: phoebe.coddington@lincolnderr.com
Lincoln Derr
4350 Congress Street
Suite 575
Charlotte, NC 28209
*Counsel for Appellees Bank of New York and Mortgage Electronic Registration Systems, Inc.*

Connie F. Jones, Esq.
Email: cflores@winston.com
Winston & Strawn
800 Capitol Street
Suite 2400
Houston, TX 77002
*Counsel for Appellees Bank of New York and Mortgage Electronic Registration Systems, Inc.*

Christina A. Parlapiano, Esq.
Email: cparlapiano@daypitney.com
Day Pitney
One Jefferson Road
Parsippany, NJ 07054
*Counsel for Appellee Residential Credit Solutions, Inc.*

Joy H. Sperling, Esq.
Email: jsperling@daypitney.com
Day Pitney
One Jefferson Road
Parsippany, NJ 07054
*Counsel for Appellee Residential Credit Solutions, Inc.*

And on the following by first class mail (two copies), handled by Wright Appellate Services:

Edith Farina
Emilio Farina
35 Mahlon Court
Toms River, NJ 08753
*Appellants, pro se*

Dated:  September 29, 2020          Respectfully submitted,


          /s/ Richard Feder
Richard Feder
Richard Feder, J.D.
Appointed Amicus